**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CLAUDETTE LOHR,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. _____ |
| **PAUL GILMAN; RAYMOND MCGLAMERY; FREDERICK D. MINTON, PhD; MARLANE MINTON; OIL MIGRATION GROUP, LLC; and WAVETECH29, LLC,** | § § § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFF CLAUDETTE LOHR'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW Plaintiff CLAUDETTE LOHR ("LOHR") and files this *Original Complaint* (the "Complaint") against Defendants PAUL GILMAN ("GILMAN"); RAYMOND MCGLAMERY ("MCGLAMERY"); FREDERICK D. MINTON, PhD ("F. MINTON"); MARLANE MINTON ("M. MINTON"); OIL MIGRATION GROUP, LLC ("OMG"); and WAVETECH 29, LLC ("WAVETECH"), and in support of said Complaint would respectfully show the Court as follows:

### I.   THE PARTIES

1. LOHR is an individual who resides in Dallas County, Texas.

2. GILMAN is an individual who resides and may be served with process at 314 5th Avenue, Venice, Los Angeles County, California 90291-2643, or wherever else he may be found.

3. MCGLAMERY is an individual who resides and may be served with process at 1401 Bowie Road, Austin, Texas 78733, or wherever else he may be found.

4. F. MINTON is an individual who resides and may be served with process at 7431 Baxtershire Drive, Dallas, Texas 75230, or wherever else he may be found.

5. M. MINTON is an individual who resides and may be served with process at 7431 Baxtershire Drive, Dallas, Texas 75230, or wherever else she may be found.

6. OMG is a Texas limited liability company located at 1401 Bowie Road, Austin, Texas 78733 and may be served by and through its registered agent Mr. Raymond McGlamery at 1401 Bowie Road, Austin, Texas 78733, or wherever else he may be found.

7. WAVETECH is a Delaware limited liability company and may be served by and through its registered agent Corporations USA, LLC at 341 Raven Circle, Wyoming, Delaware 19934, or wherever else it may be found.

## II.   JURISDICTION AND VENUE

8. This Court has jurisdiction over the persons and subject matter of this proceeding pursuant to 28 U.S.C. §§1331, 1337, 1367; 15 U.S.C. §§78aa(a), 77v(a); and 18 U.S.C. §1964(c).

9. Pursuant to 28 U.S.C. §1391(b)(2) and/or (3); and 18 U.S.C. §1965, venue is proper in this Court.

## III.     FACTUAL ALLEGATIONS

10.     In or about early 2014, F. MINTON and M. MINTON (hereinafter collectively referred to as the "MINTONS") approached LOHR regarding an investment opportunity related to the oil and gas industry.

11.     The MINTONS introduced LOHR to GILMAN who described to LOHR an audio technology that positively affects the viscosity of oil that assists in the recovery (secondary, tertiary, fracking, and all other known methods of oil discovery) of oil; the storage of oil (due to less adhesion to tanks); and the transportation of oil (due to less adhesion to tanks, pipelines and shipping vessels, as well as a decrease in friction and significant acceleration of the oil's velocity of travel through pipelines).

12.     GILMAN expressed to LOHR that "through extensive study of velocity profiles and fluid dynamics" his "team has identified the correlation between this decrease in friction and a significant acceleration of the oil's velocity of travel through transport pipelines."

13.     GILMAN also claimed that his audio technology could "greatly reduce" the "work of a pumping stating" creating options for the operator to "either reduce the pumping power (reduction of costs) or maintain power at a sustained rate and increasing output (quicker payback for [sic] operator)."

14.     GILMAN went on to describe to LOHR the deployment of his audio technology on pipelines as attaching "to the outside (various points) converting the pipeline into a massive transducer" that has a "small footprint" and that "does not alter the integrity of the pipeline." GILMAN described further that the transmission of the audio signal to the pipeline would be "offsite and received via a/d converters (~size of a TV cable box or two rack space 19')" and that

the audio technology would be "able to stand up to any weather conditions; units encased in tamper-proof enclosures built by an independent resource that does extensive work for classified military projects."

15. GILMAN represented to LOHR that he "created a unique process starting with the unique processing components that are the 'tools' incorporating a method IP to generate sonic composition of multiple layers, regions and envelopes encompassing sources and modular elements uniquely capable of this process."

16. GILMAN represented to LOHR that the "resulting effects of this Energy to viscous hydrocarbons can alter or change the hydrocarbon chemical chain producing a lower viscosity and perhaps the API gravity of the stimulated carbon." GILMAN further represented that his technology would "lower the emulsion tendencies" and increase "the monetary value of the hydrocarbon." GILMAN even represented to LOHR that his technology could "recover oil that was dormant or in a well that has dropped on the production curve to rise to higher levels."

17. GILMAN also represented to LOHR that "numerous laboratory studies" were conducted that were "focused on applying his sound energy technology at certain frequencies to a 42 gallon barrel of B10 biodiesel oil mixed with algae" and that GILMAN witnessed a "significant reduction in viscosity as a result of this sonication" and it was "proven that the sonified oil did **not** have irreversible tendencies." GILMAN represented to LOHR that all these claims were "confirmed through a series of independent tests conducted by [sic] third party laboratory."

18. GILMAN then offered LOHR an opportunity to invest in his company to which GILMAN would license his proprietary (above described) and "patent-pending" technology (the "Sono-Oil Tech").

19. On or about February 7, 2014, GILMAN e-mailed LOHR a "memorandum of understanding" related to the investment GILMAN hoped to induce LOHR into making in OMG ("MOU"). A true and correct copy of said MOU is attached hereto as "Exhibit 1," and is incorporated by reference as if fully set forth herein. Neither LOHR nor GILMAN ever executed the MOU, however that didn't dissuade GILMAN from taking LOHR's money.

20. Later on or about February 7, 2014, GILMAN e-mails LOHR instructions to wire her "investment" in OMG to an account held in GILMAN's name at City National Bank location in Beverly Hills, California (this is probably due to the fact that OMG had not yet been formed).

21. The MOU references a "Non-Disclosure Agreement signed by Claudette Lohr individually," but LOHR never received or executed any such document.

22. On or about February 10, 2014, LOHR wired GILMAN $40,000.00 for what GILMAN described as a 2% ownership and/or equity interest in OMG.

23. On February 25, 2014 (more than two weeks after receiving LOHR's $40,000.00 investment), OMG is formed when a certificate of formation is filed with the Texas Secretary of State (the "Certificate of Formation"). A true and correct copy of said Certificate of Formation is attached hereto as "Exhibit 2," and is incorporated by reference as if fully set forth herein. The Certificate of Formation indicates that MCGLAMERY and GILMAN are the managers of OMG. *See* Exhibit 2.

24. On or about May 20, 2014, GILMAN provided LOHR with a "Gilman - Soundwave Viscosity Investor Overview" in order to further induce LOHR into transferring additional funds to OMG and/or WAVETECH (the "Soundwave Overview"). A true and correct copy of said Soundwave Overview is attached hereto as "Exhibit 3," and is incorporated by reference as if fully set forth herein.

25. On or about May 20, 2014, GILMAN e-mailed LOHR to acknowledge LOHR's 2% interest in OMG and promising the delivery of more formal documents evidencing LOHR's purported interest in OMG. None of the Defendants ever provided LOHR with "more formal documents" evidencing her purported interest in OMG.

26. On or about May 21, 2014, GILMAN induced LOHR to transfer another $150,000.00 in exchange for another alleged 1% interest in OMG.

27. On or about July 24, 2014, GILMAN induced LOHR to transfer another $100,000.00 in exchange for a 2% interest in WAVETECH. Later, GILMAN issued an e-mail to LOHR "confirming" that LOHR's investment is in exchange for 2% of Wavetech29, LLC and then provided wiring instructions for an account held by iWavetech29, LLC.

28. On or about October 10, 2014, GILMAN induced LOHR to transfer another $100,000.00 in exchange for 3% interest in the "first one to come in" in OMG or WAVETECH. After inducing LOHR to transfer the $100,000.00, GILMAN issues an e-mail to LOHR indicating that they will "formalize terms on a future date with more information from arrangements we enter with Axcess Worldwide and others." None of the Defendants ever provided LOHR with more formal terms related to her "investment."

29. On or about February 4, 2015, GILMAN e-mailed LOHR regarding news that the "Panama Pipeline [sic] Pipeline is slowing and thickening" in an effort to convince LOHR that OMG, and/or WAVETECH is going to have an opportunity to deploy the Sono-Oil Tech.

30. However, during subsequent telephone conversations, GILMAN explains that the Sono-Tech was not deployed on the Panama Pipeline because the owner of the Panama Pipeline had an emergency in Japan so the Sono-Oil Tech could not be deployed.

31. On or about February 29, 2015, GILMAN induced LOHR to transfer another $100,000.00 in exchange for a 2% interest in "Water Separation" technology.

32. On or about March 11, 2015, GILMAN induces LOHR to transfer another $50,000.00 in exchange for a 1% interest in "Water Separation" technology.

33. F. MINTON, a PhD in psychology, and his wife M. MINTON actively participated and assisted GILMAN in inducing LOHR into investing in GILMAN's sham companies (OMG and WAVETECH) and contrived Sono-Oil Tech.

34. F. MINTON, whom LOHR met at the Church she attends, used his training in psychology to cultivated a relationship of trust with LOHR even going so far as to offer LOHR (whose parents passed away while LOHR was very young) counseling (despite the fact that F. MINTON's license as a professional counselor had lapsed) free of charge.

35. During all relevant periods, the MINTONS continually reassured LOHR of GILMAN's ability to create such wonderful and awe-inspiring technology such as the Sono-Oil Tech and of GILMAN's credibility as a trustworthiness as a person. The MINTONS comments often involve and/or reference the Judeo-Christian God in order to cause LOHR to trust the representations of the MINTONS's as both the MINTONS and LOHR attend the same Christian church. The MINTONS's reassurances directly assisted, aided, and/or abetted OMG, WAVETCH, MCGLAMERY, and/or GILMAN in pilfering LOHR's money.

36. During all relevant periods, and while not registered as a broker with the United States Securities Exchange Commission (the "Commission"), GILMAN used the telephone and the mails to actively solicit investors, including, but not limited to, LOHR to purchase interests in OMG and/or WAVETECH and/or Sono-Oil Tech, and thereby effected purchases and sales of securities for the account of others. GILMAN handled investor funds, advised on the merits of

the OMG and/or WAVETECH use of and/or the viability of the fake Sono-Oil Tech, and personally used the investments solicited for his personal use. Through these activities, GILMAN acted as an unregistered broker.

37. During all relevant periods, GILMAN communicated with LOHR via telephone and/or e-mail communications in the State of California to LOHR in the State of Texas.

38. None of the Defendants took any action to determine whether LOHR was an accredited investor.

39. LOHR has never actively participated in the operation of WAVETECH or OMG.

40. On April 16, 2015, LOHR e-mails GILMAN and F. MINTON a request for the issuance of a K-1 tax form from any entity in which she has invested through F. MINTON and/or GILMAN to enable LOHR to file her federal income tax return and a copy of various books and records that OMG is required to provide LOHR as an owner under the Texas Business Organizations Code. Neither GILMAN nor F. MINTON provided LOHR with any of the requested documents.

41. LOHR never received any documentation evidencing her alleged ownership interest in OMG and/or WAVETECH other than a scant number of e-mail communications.

42. The total amount LOHR "invested" in exchange for ownership interests and/or "equity interests" in various entities, and/or other interests in technology, including, but not limited to, the Sono-Oil Tech is Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00).

43. Upon information and belief, OMG and/or WAVETECH were formed as a sham to perpetrate a fraud on unsuspecting investors like LOHR.

44. Upon information and belief, OMG and/or WAVETECH are the mere tool or business conduit of GILMAN and/or MCGLAMERY.

45. Upon information and belief, OMG and/or WAVETECH were used to protect against the discovery of a crime or to justify a wrong.

46. Upon information and belief, OMG and/or WAVETECH were and/or are inadequately capitalized with the effect of creating an injustice.

### IV.   CLAIMS AGAINST DEFENDANTS

**Claim 1:   Violations of Section 17 [15 U.S.C. §77q] of the Securities Act [15 U.S.C. §77a et seq.]**

47. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

48. Defendants GILMAN; MCGLAMERY; F. MINTON; M. MINTON; OMG; and WAVETECH (hereinafter GILMAN; MCGLAMERY; F. MINTON; M. MINTON; OMG; and WAVETECH are collectively referred to as "Defendants") directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes, and artifices to defraud, (b) obtained money or property by means of untrue statements of material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operate or would operate as a fraud and deceit upon LOHR.

49. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, Defendants were negligent in their actions regarding the representations and omissions alleged herein. With respect to violations of Section 17(a)(1) of the Securities Act, Defendants made the

referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

50. For these reasons, Defendants have violated Section 17(a) of the Securities Act of the Securities Act [15 U.S.C. §77q(a)].

**Claim 2: Fraud Violations of Section 10(b) [15 U.S.C. §78j(b)] of the Exchange Act [15 U.S.C. §78a et seq.]**

51. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

52. Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as fraud and deceit upon purchasers, prospective purchases, and any other persons.

53. Defendants have made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

54. For these reasons, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

**Claim 3: Offers and Sales of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act**

55. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

56. Defendants, directly or indirectly, singly or in concert with others, have been offering to sell, selling and delivery after sale, certain securities, and have been, directly and indirectly,: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of the sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

57. As described herein, Defendants offered and sold fraudulent interests in OMG, WAVETECH, and/or Sono-Oil Tech to LOHR. No registration statement has been filed with the Commission or is otherwise in effect with these securities.

58. By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§77e(a) and 77(e)(c)].

**Claim 4:   Offers and Sales of Securities by an Unregistered Broker-Dealer in Violation of Exchange Act Section 15(a).**

59. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

60. Defendants, while engaged in the business of effecting transactions in securities for the account of others, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered in accordance with Section 15(a) of the Exchange Act [15 U.S.C. §78o(a)].

**Claim 5:** **Use of Income Derived from a Pattern of Racketeering Activity to Invest in the Acquisition, Establishment and/or Maintenance of an Enterprise Affecting Interstate Commerce [18 U.S.C. §§1961(5) and 1962(a)]**

61. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

62. Title 18 §1961(1) defines "racketeering activity" as including "any act which is indictable under any of the following provisions of title 18, United States Code: … §1341 (relating to mail fraud), §1343 (relating to wire fraud) … §1952 (relating to racketeering) … §1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) … fraud in the sale of securities … ."

63. At various times and places, partially enumerated above, Defendants used income derived from a pattern of racketeering activity to invest, directly or indirectly, part of such income, in the acquisition of an interest in, or the establishment or operation of, an enterprise affecting interstate commerce.

64. At various times and places, partially enumerated above, Defendants devised or intended to devise a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, or sold, disposed of, exchanged, distributed, supplied, or furnished for an unlawful use an obligation, security, or other article to LOHR for the purpose of executing a scheme or artifice against LOHR, knowingly placed in a post office or authorized depository for mail matter, matters or things in furtherance of their scheme or artifice to defraud or obtain money by means of false or fraudulent representations, and therefore, engaged in mail fraud against LOHR.

65. At various times and places, partially enumerated above, Defendants devised or intended to devise a scheme or artifice to defraud, or obtained money or property by means of

false or fraudulent pretenses, representations, or promises, by transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice to defraud LOHR.

66. At various times and places, partially enumerated above, Defendants traveled in interstate commerce or used the mail or facilities in interstate commerce with the intent to distribute the proceeds of their unlawful activity, or otherwise promoted, managed, established, carried on, or facilitated the promotion, management, establishment, or carrying on, of their unlawful activity, and thereafter, distributed or attempted to distribute the proceeds of their unlawful activity or promoted, managed, established, carried on, or facilitated or attempted to promote, manage, establish, carry on or facilitate their unlawful activity against LOHR.

67. At various times and places, partially enumerated above, Defendants have engaged in a pattern of racketeering activity in furtherance of an enterprise engaged in the fraudulent sale of unregistered securities.

**Claim 6:    Violation of Texas Blue Sky Laws**

68. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

69. Defendants made misrepresentations of relevant facts and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading during the sale and/or purported sale of securities to LOHR.

70. As a result of said misrepresentations of relevant facts and/or failure to disclose material facts, Defendants are liable to LOHR pursuant to Texas Vernon's Civil Statutes §19.581-33(A)(2).

71. To the extent that any Defendant is not the seller and/or issuer of the securities sold to LOHR, but directly or indirectly controls the seller and/or issuer of the securities sold to LOHR, such Defendants are liable to LOHR pursuant to Texas Vernon's Civil Statutes §19.581-33(F)(1).

72. To the extent that any Defendant is neither the seller and/or issuer of the securities sold to LOHR nor a person who either directly or indirectly controls the seller and/or issuer of the securities sold to LOHR but such Defendants directly or indirectly with the intent to deceive or defraud or with reckless disregard for the truth or the law materially aided the seller or issuer of a security of LOHR, such Defendants are liable to LOHR pursuant to Texas Vernon's Civil Statutes §19.581-33(F)(3).

**Claim 7:	Statutory Fraud**

73. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

74. Defendants OMG, WAVETECH, GILMAN, and/or MCGLAMERY entered into a transaction with LOHR involving stock (the "Transaction").

75. During the Transaction, Defendants made false representations of fact, false promises, or benefitted by not disclosing that a third party's representations or promises were false.

76. The false representations and/or promises were made for the purpose of inducing LOHR to enter into the Transaction.

77. LOHR relied on the false representations and/or promises by providing funds to OMG and/or WAVETECH.

78. LOHR's reliance on Defendants' false representations and/or promises caused her to suffer actual damages in the amount of Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00).

**Claim 8:    Common Law Fraud**

79. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

80. Defendants made false representations of material fact to LOHR with regard to OMG, WAVETECH, and/or the Sono-Oil Tech.

81. When Defendants made the false representations of material fact, Defendants knew the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of its truth.

82. Defendants made the representations with the intent that LOHR act on the false representations of material fact.

83. LOHR relied on the false representations of material fact by providing funds to OMG and/or WAVETECH.

84. Defendants' false representations of material fact caused LOHR to suffer actual damages in the amount of Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00).

**Claim 9:    Money Had & Received**

85. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

86.	Defendants OMG, WAVETECH, MCGLAMERY, and/or GILMAN hold the Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00) that LOHR transferred to OMG and/or WAVETECH.

87.	The Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00) in equity and good conscience belongs to LOHR.

**Claim 10:	Declaratory Judgment for a Constructive Trust**

88.	To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

89.	Defendants obtained Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00) through a scheme or artifice to defraud and/or or to obtain money from LOHR by means of false or fraudulent pretenses, representations, or promises made to LOHR.

90.	Because the Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00) can be traced directly to the Defendants, LOHR seeks a declaratory judgment for the imposition of a constructive trust in favor of LOHR on all property within the possession or control of any of the Defendants directly or equitably traceable to the Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00).

91.	Accordingly, the Court should declare that none of the Defendants are entitled to use, disburse, spend, or otherwise transfer any part of the Five Hundred Forty Thousand and 00/100 Dollars ($540,000.00).

**Claim 11:	Piercing the Corporate Veil**

92.	To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

93. The corporate forms of OMG and WAVETECH should be disregarded because both entities were used as a sham to perpetrate a fraud; were organized and operated as a mere tool or business conduit of GILMAN and/or MCGLAMERY; were used to protect against the discovery of a crime or to justify a wrong; and were inadequately capitalized with the effect of creating an injustice.

94. Consequently, LOHR requests that the Court hold GILMAN, MCGLAMERY, OMG, and WAVETECH jointly and severally liable for the damages caused to LOHR.

**Claim 12:   Aiding & Abetting – Assisting or Encouraging**

95. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

96. GILMAN individually and/or by and through OMG and/or WAVETECH committed a tort against LOHR.

97. The MINTONS had knowledge that GILMAN's conduct individually and/or by and through OMG and/or WAVETECH constituted a tort.

98. The MINTONS intended to assist GILMAN in committing the tort.

99. The MINTONS gave GILMAN assistance or encouragement in the commission of the tort.

100. The MINTONS's assistance and/or encouragement was a substantial factor in enabling GILMAN to commit the tort against LOHR.

101. Consequently, LOHR requests that the Court hold the MINTONS jointly and severally liable for the damages caused to LOHR by GILMAN individually and/or GILMAN acting by and through OMG and/or WAVETECH.

**Claim 13:**   **Conspiracy**

102. To the extent not inconsistent, Plaintiff LOHR re-alleges and incorporates paragraphs 10 through 46 of this Complaint by reference as if fully set forth in this claim.

103. Defendants are members of a combination of two or more persons.

104. The object of the combination was to accomplish an unlawful purpose.

105. The Defendants had a meeting of the minds on the object or course of action.

106. One or more of the members of the Defendants committed an unlawful, overt act to further the object or course of action.

107. LOHR suffered damages as a proximate result of the wrongful act committed by one or more of the Defendants.

108. LOHR requests that the Court hold the Defendants jointly and severally liable for the damages suffered by LOHR.

## V. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff CLAUDETTE LOHR respectfully prays that this Court enter a judgment against Defendants PAUL GILMAN; RAYMOND MCGLAMERY; FREDERICK D. MINTON; MARLANE MINTON; OIL MIGRATION GROUP, LLC; and WAVETECH 29, LLC, jointly and severally, as follows:

1. $540,000.00 in actual damages;

2. $1,080,000.00 for violation of the Racketeer Influenced and Corrupt Organizations Act in accordance with 18 U.S.C. §1964;

3. Exemplary damages for common law and/or statutory fraud;

4. a declaratory judgment imposing a constructive trust and attachment against all property traceable to the LOHR's funds in the amount of at least $540,000.00 held in any form by any of the Defendants;

5. Attorneys' fees as recoverable;

6. Pre-judgment and post judgment interest;

7. Court costs; and

8. Such further and other relief, at law or in equity, to which Plaintiff has shown herself entitled.

Dated: June 3, 2015

>Respectfully submitted,
>
>  /s/Michael H. Myers
> Michael H. Myers
> Texas State Bar No. 24032779
> Mark A. Castillo
> Texas State Bar No. 24027795
> Joshua L. Shepherd
> Texas State Bar No. 24058104
> **CURTIS | CASTILLO PC**
> 901 Main Street, Suite 6515
> Dallas, Texas 75202
> Telephone: 214.752.2222
> Facsimile: 214.752.0709
> E-mail: mmyers@curtislaw.net
>
> **COUNSEL FOR PLAINTIFF CLAUDETTE LOHR**