## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CLAUDETTE LOHR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:15-CV-1931-L |
| | § | |
| **PAUL GILMAN; RAYMOND** | § | |
| **MCGLAMERY; FREDERICK D.** | § | |
| **MINTON PhD.; MARLANE MINTON;** | § | |
| **OIL MIGRATION GROUP, LLC; and** | § | |
| **WAVETECH29, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: Defendant Raymond McGlamery's Motion to Dismiss First Amended Complaint (Doc. 19), filed September 28, 2015; Defendants Fred and Marlane Minton's Motion to Dismiss First Amended Complaint (Doc. 20), filed September 28, 2015; and Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss First Amended Complaint (Doc. 21), filed September 28, 2015. After careful consideration of the motions, responses, replies, pleadings, and applicable law, the court **grants** Defendant Raymond McGlamery's Motion to Dismiss First Amended Complaint; **grants in part and denies in part** Defendants Fred and Marlane Minton's Motion to Dismiss First Amended Complaint; and **grants in part and denies in part** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss First Amended Complaint.

## I.      Procedural and Factual Background

This case arises from an alleged fraudulent investment scheme in oil and gas and bio-fuel companies.  Plaintiff Claudette Lohr ("Lohr" or "Plaintiff"), a widow living in Dallas, Texas, brings this private securities fraud action against Defendants and alleges that, acting in concert, they fraudulently induced her into making a total investment of $540,000 in two companies—Oil Migration Group, Inc. ("OMG") and Wavetech29, LLC ("Wavetech")—both of which she contends are sham enterprises.   According to Plaintiff, Defendants falsely promoted these enterprises to her as owning, or owning a license to, cutting edge audio technology that affects oil viscosity and oil recovery procedures (hereinafter the "OMG Technology" and the "Water Separation Technology").  Plaintiff alleges that she was induced by Defendants' myriad fraudulent statements about the technology to invest in OMG and Wavetech, and charges that Defendants made these misrepresentations knowingly and willfully, or in reckless disregard of their falsity, and that she relied on the statements to her detriment.   The court now sets out the facts upon which it relies in deciding the pending motions to dismiss, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The facts are drawn from Plaintiff's First Amended Complaint ("Complaint"), the live pleading.  *See* Compl. (Doc. 15).

### A.      The Alleged Solicitation by Frederick and Marlane Minton

In or about late 2013, Plaintiff met Defendant  Marlane Minton ("Mrs. Minton") at a Bible study at a church they both attended.  Mrs. Minton often discussed oil and gas businesses and bio-fuel businesses in which she and her husband, Defendant Frederick Minton ("Mr. Minton") (sometimes collectively, the "Mintons") allegedly invested.  Mrs. Minton seemed especially

interested in discussing the Mintons' alleged investments with widows who attended the Bible study. In or about 2014, Plaintiff learned that Mrs. Minton had dental surgery and prepared a meal, which she took to the Minton home, at which time Mr. Minton discussed investing in OMG. The Mintons told Plaintiff that they had met Defendant Paul Gilman ("Gilman") in connection with their investments in the movie industry, and that Gilman was seeking investments in OMG and Wavetech to obtain funding for additional testing and to pursue patents for the OMG Technology. The Mintons told Plaintiff that Gilman was about to meet with investors in New York to raise money to file for patents and for further testing of the OMG Technology. The Mintons also told Plaintiff that time was of the essence to invest in OMG and Wavetech, as the value of the two entities was certain to increase as Gilman continued to prove the application of the OMG Technology in various areas of the oil and gas industry. The Mintons assured Plaintiff that Gilman would sell his concept through OMG and Wavetech, and that she would receive a return on her investment prior to the end of 2014. The Mintons made these false representations with the intent that Plaintiff would rely upon them and invest in OMG and Wavetech.

**B.    Gilman's Role in the Alleged Scheme**

After Plaintiff expressed an interest in investing in OMG and Wavetech, the Mintons introduced her to Gilman. Plaintiff alleges that Gilman, acting at all times as a representative and owner of OMG and Wavetech, enticed Plaintiff to invest initially in OMG, and later in Wavetech, by making, among others, the following fraudulent representations:

• Gilman claimed that OMG owned, or owned a license to, the OMG Technology, an audio technology he developed:

> that positively affects the viscosity of oil that assists in the recovery (secondary, tertiary, fracking, and all other known methods of oil discovery) of oil; the storage of oil (due to less adhesion to tanks);

and the transportation of oil (due to less adhesion to tanks, pipelines and shipping vessels, as well as a decrease in friction and significant acceleration of the oil's viscosity of travel through pipelines)[.] Compl. ¶ 18.

• Gilman told Plaintiff that "through extensive study of velocity profiles and fluid dynamics" his "team has identified the correlation between this decrease in friction and a significant acceleration of the oil's velocity of travel through transport pipelines." *Id.* ¶ 19.

• Gilman claimed that the OMG Technology could "greatly reduce" the "work of a pumping [station]" creating options for the operator to "either reduce the pumping power (reduction in costs) or maintain power at a sustained rate and increas[e] output (quicker payback for [the] operator)." *Id.* ¶ 20.

• Gilman represented that the OMG Technology would "lower the emulsion tendencies" and increase "the monetary value of the hydrocarbon"; "recover oil that was dormant or in a well that has dropped on the production curve to rise to higher levels"; and that "numerous laboratory studies" were conducted that were "focused on applying" the OMG Technology "at certain frequencies to a 42 gallon barrel of B10 biodiesel oil mixed with algae" and that he witnessed "a significant reduction in viscosity as a result of this sonification" and it was "proven that the sonified oil did not have irreversible tendencies." *Id.* ¶¶ 25-27.[1]

• Gilman also claimed that all his representation regarding OMG Technology were "confirmed through a series of independent tests conducted by [sic] third party laboratory." *Id.* ¶ 28.

• Gilman then offered Plaintiff an opportunity to invest in OMG, to which he had given or assigned an exclusive license in the "patent-pending" OMG Technology. *Id.* ¶ 29.

• On February 4, 2015, Gilman e-mailed Plaintiff regarding news that the "Panama Pipeline is slowing and thickening" in an effort to convince her that OMG was going to have an opportunity to deploy the OMG Technology. *Id.* ¶ 44. During subsequent telephone conversations, Gilman told Plaintiff that the OMG Technology was not deployed on the Panama Pipeline because the pipeline's owner had an emergency in Japan.

---

[1] Gilman also made numerous other specific representations concerning the OMG Technology. *See* Compl. ¶¶ 21-28.

Plaintiff alleges, on information and belief, that Gilman's representations concerning OMG and OMG Technology were false and were made only to induce Plaintiff into investing in OMG. Plaintiff further alleges, on information and belief, that representations about technology and possible deployment of the technology were false and made for the purpose of assuring Plaintiff that the OMG Technology and her investment in OMG were legitimate, and to induce her into making further investments.

### C.      Plaintiff's Transfer of $40,000 to Gilman's Account

On or about February 7, 2014, Gilman e-mailed Plaintiff a "Memorandum of Understanding" in a further attempt to induce her to invest in OMG.  *See* Memorandum of Understanding ("MOU"), attached as Exhibit 1 to Complaint.  Neither Gilman nor Plaintiff executed the MOU, although that fact did not dissuade Gilman from accepting Plaintiff's money on behalf of OMG.  The MOU references a "Non-Disclosure Agreement," but Plaintiff never received or executed any such document.  Later that same day, Gilman e-mailed Plaintiff instructions to wire her "investment" in OMG to an account held in Gilman's name at City National Bank (the "Gilman Account"), located in Beverly Hills, California.  On or about February 10, 2014, in reliance upon the Mintons' and Gilman's representations detailed above, Plaintiff wired $40,000 to the Gilman Account for what Gilman described as a 2% ownership and/or equity interest in OMG.

### D.      McGlamery's Role in the Alleged Scheme

On February 25, 2014, more than two weeks after Plaintiff wired the $40,000 to the Gilman Account, Defendant Raymond McGlamery ("McGlamery") formed OMG by filing a certificate of formation with the Texas Secretary of State.  *See* Certificate of Formation, attached as Exhibit 2 to the Complaint.  The Certificate of Formation lists McGlamery and Gilman as OMG's "Managers."

*Id.*  Plaintiff alleges, on information and belief, that McGlamery filed the Certificate of Formation with the Texas Secretary of State "to give an air of legitimacy to the scheme that Gilman, McGlamery, and the Mintons had concocted to trick people into investing in OMG, including, but not limited to," Plaintiff.  Compl. ¶ 36.

Plaintiff alleges, on information and belief, that McGlamery knew of Gilman's false representations, knew she had invested in OMG, personally benefited from Gilman's false representations, and took no action to inform her of the false nature of Gilman's representations.

### E.   Plaintiff's Transfer of Additional Amounts to the Gilman Account Following Further Fraudulent Representations

On or about May 20, 2014, Gilman provided Plaintiff with a document titled "Gilman - Soundwave Viscosity Investor Overview" to further induce her into investing additional funds in OMG and also investing in Wavetech.  *See* "Gilman - Soundwave Viscosity Investor Overview" ("Soundwave Overview"), attached as Exhibit 3 to the Complaint.  Page One of the Soundwave Overview contains a quotation attributed to Gilman, described as "CEO/Inventor & Chief Technologist," which states: "Viscosity is the holy grail of the oil industry and we've captured it." *See id.*

On or about May 20, 2014, Gilman e-mailed Plaintiff to acknowledge her 2% interest in OMG and promised to deliver "more formal documents" evidencing her interest in OMG.  Compl. ¶ 38.  None of the Defendants ever provided Plaintiff with these promised documents.

Based on Gilman's and the Mintons' representations, and the Certificate of Formation filed by McGlamery, *see supra*, in addition to her initial $40,000 investment, Plaintiff made the following investments in OMG and Wavetech:

• On May 21, 2014, Plaintiff transferred $150,000 to Gilman in exchange for another alleged 1% interest in OMG.

• On July 24, 2014, Plaintiff transferred $100,000 to Gilman in exchange for an alleged 2% interest in Wavetech.  Later that day, Gilman confirmed via e-mail to Plaintiff that her investment of $100,000 was in exchange for a 2% interest in Wavetech.  Gilman also provided Plaintiff with instructions for wiring money to an account held by "iWavetech29, LLC."  *Id.* ¶ 41.

• On October 10, 2014,  Plaintiff transferred $100,000 to Gilman in exchange for an alleged 3% interest in the "first one to come in" in OMG or Wavetech.  *Id.* ¶ 42.  After this transfer, Gilman sent an e-mail to Plaintiff indicating that they will "formalize terms on a future date with more information from arrangements we enter with Axcess Worldwide and others."  *Id.* ¶ 43.  None of the Defendants provided Plaintiff with more formal terms related to her "investment."

• On February 29, 2015, Plaintiff transferred $100,000 to Gilman as an investment in Wavetech in exchange for an alleged 2% interest in the Water Separation Technology purportedly owned by Wavetech.

• On March 11, 2015, Plaintiff transferred another $50,000 to Gilman as an investment in Wavetech in exchange for an alleged 1% interest in the Water Separation Technology purportedly owned by Wavetech.

Plaintiff alleges, on information and belief, that the above-pleaded representations made by Gilman concerning OMG, OMG Technology, Wavetech, and "Water Separation Technology" were false and were made only to induce Plaintiff into investing in OMG and Wavetech, which were sham enterprises.  Plaintiff further alleges, on information and belief, that Wavetech does not own any Water Separation Technology and, therefore, this statement was false and made for the purpose of inducing Plaintiff into investing in Wavetech and the Water Separation Technology.

### F.    The Mintons' Continued Role in the Alleged Scheme

Mr. Minton, who holds a PhD. in Psychology, and Mrs. Minton, actively participated and assisted Gilman in inducing Plaintiff to invest in Gilman's sham companies (OMG and Wavetech) and contrived OMG Technology and Water Separation Technology.  The Mintons knew that

Gilman's representations, made in his capacity as owner or representative of OMG and Wavetech, were false.  The Mintons personally benefited from assisting Gilman in inducing Plaintiff into investing in the sham companies and contrived technologies.

Mr. Minton, whom Plaintiff met at the church she attends, used his training in psychology to cultivate a relationship of trust with Plaintiff, even going so far as counseling her free of charge, notwithstanding that his professional counseling license had expired.  During all relevant times, the Mintons reassured Plaintiff of Gilman's ability to create the technology and vouched for his credibility and trustworthiness so as to convince Plaintiff of the legitimacy of the OMG Technology and the Water Separation Technology, as well as the legitimacy of the companies Gilman created and in which he was actively seeking investors, all despite the Mintons' knowledge that Gilman's representations were false.  The Mintons' assurances often involved referencing the "Christian God" to cause Plaintiff to trust the representations, as the Mintons and Plaintiff attended the same church. *Id.* ¶ 53.  It was common that the Mintons would pray with Plaintiff, and the prayers often included a petition for Plaintiff to get accustomed to being someone wealthy, as well as a petition for blessings for Gilman.  The Mintons' reassurances directly assisted, and aided and abetted, OMG, Wavetech, McGlamery, and Gilman "in pilfering" Plaintiff's money.  *Id.* ¶ 55.

In furtherance of their scheme, Mr. Minton provided Plaintiff with counseling regarding how to "fit in" with the "rich folk" at the Bonaventure in preparation for her receipt of "millions" from her investment.  *Id.* ¶ 56.  Mr. Minton discussed how Plaintiff would set up foundations to handle the "millions" that he indicated she would be receiving from her investments.  *Id.*  Mr. Minton made these reassuring comments despite knowing Gilman's representations regarding OMG Technology and Water Separation Technology were false.

**Memorandum Opinion and Order – Page 8**

### G.      Allegations Regarding Defendants' Disregard of the Corporate Structure

Plaintiff alleges, upon information and belief, that OMG and Wavetech: (1) "were formed by Gilman, McGlamery, and the Mintons as a sham to perpetrate a fraud on unsuspecting investors," including Plaintiff; (2) "are the mere tool or business conduit of Gilman, McGlamery, and the Mintons"; (3) "were used to protect against the discovery of a crime or to justify a wrong by Gilman, McGlamery, and the Mintons"; (4) "were and/or are inadequately capitalized by Gilman, McGlamery, and the Mintons with the effect of creating an injustice"; and (5) "Gilman, McGlamery, and the Mintons used the funds that they received from [Plaintiff's] investment in OMG[,] the OMG tech[nology][,] Wavetech, and/or the 'water separation' technology for their own personal use and/or use in legitimate business enterprises." *Id.* ¶¶ 66-70.

### H.      Allegations Regarding Gilman's Actions as an Unregistered Broker of Securities

During all relevant periods, Gilman, who was not registered as a broker with the United States Security and Exchange Commission ("SEC"), used the telephone and mails to actively solicit investors, including but not limited to Plaintiff, to purchase interests in OMG, the OMG Technology, Wavetech, and the Water Separation Technology, and thereby effected purchases and sales of securities for the account of others.  Gilman, acting as a representation of OMG and Wavetech, handled investor funds, advised on the merits of the OMG Technology and OMG's use of it, and on the merits of the Water Separation Technology and Wavetech's use of it, and used Plaintiff's investments for his own use.  Through these activities, Gilman acted as an unregistered broker of securities in OMG and Wavetech.  During all relevant time periods, Gilman communicated with Plaintiff via telephone and e-mail communications in the State of California to Plaintiff in the State

of Texas.  None of the Defendants took any actions to determine whether Plaintiff was an accredited investor.  Plaintiff never actively participated in the operation of OMG or Wavetech.

### I.        Plaintiff Files this Lawsuit After Failing to Receive Requested Documents

On April 6, 2015, Plaintiff e-mailed Gilman and requested the issuance of a K-1 tax form from any entity in which she had invested to enable her to file her federal income tax returns, as well as a copy of various books and records OMG is required by state law to give Plaintiff.  Plaintiff was never provided with the requested documents, or any of the formal documents Gilman had promised her relating to her interest in OMG and Wavetech.

On June 3, 2015, Plaintiff filed this lawsuit.  At the core of the lawsuit are Plaintiff's allegations that Gilman, the Mintons, and McGlamery, motivated by personal profit, knowingly participated in setting up OMG and Wavetech, shell companies that purportedly owned an interest in contrived technology (OMG Technology and Water Separation Technology), for the sole purpose of fraudulently inducing Plaintiff to invest her money.  In total, Plaintiff invested $540,000 in OMG and Wavetech.

Plaintiff's Complaint alleges twelve claims for relief, as follows:

*Claim 1* (against all Defendants *except* McGlamery): Violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Securities Exchange Commission ("SEC") Rule 10b-5 [17 C.F.R. § 240.10b-5];

*Claim 2* (against Gilman, OMG, and Wavetech *only*): Violations of Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] prohibiting the offering and selling of unregistered securities;

*Claim 3*  (against Gilman, OMG, and Wavetech *only*): Violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] prohibiting the offering and selling of securities by an unregistered broker-dealer;

*Claim 4* (against all Defendants *except* McGlamery): Violations of Section 1962 of the Racketeering Influenced and Corrupt Organizations Act ("RICO") [18 U.S.C. § 1962(c)];

*Claim 5* (against all Defendants *except* McGlamery): Violations of Texas Blue Sky Laws;

*Claim 6* (against all Defendants): Statutory fraud;

*Claim 7* (against all Defendants *except* McGlamery): Common law fraud;

*Claim 8* (against Gilman, OMG, and Wavetech *only*): Money had and received;

*Claim 9* (against Gilman, OMG, and Wavetech *only*): Declaratory judgment for a constructive trust;

*Claim 10* (against Gilman, OMG, Wavetech, and McGlamery): Piercing the corporate veil;

*Claim 11* (against the Mintons and McGlamery *only*): Aiding and abetting; and

*Claim 12* (against all Defendants): Conspiracy[2]

Plaintiff seeks actual damages in the amount of $540,000, as well as $1,080,000 for violations of the RICO Act, exemplary damages for common law and statutory fraud, attorney's fees, and costs.

Defendant McGlamery moves to dismiss all claims asserted against him (Claims 6, 10, 11, and 12) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants Gilman, OMG, and Wavetech move to dismiss all claims asserted against them (Claims 1 through 10 and Claim 12) pursuant to Rule 12(b)(6) and, with respect to Claim 1 and Claims 4 through 7, which sound in fraud, also move to dismiss pursuant to Rule 9(b). The Mintons seek dismissal of all claims brought against them (Claims 1, 4, 5, 6, 7, 11, and 12) for failure to state a claim under Rule 12(b)(6) and

---

[2] The Complaint mistakenly labels Claim 12 as Claim 13. As there are only twelve claims, the court refers to the conspiracy claim as Claim 12.

**Memorandum Opinion and Order – Page 11**

under Rule 9(b) for failure to allege fraud with the requisite particularity.  All three motions to

dismiss are ripe for adjudication.

## II.        Applicable Legal Standards

### A.        Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal citations omitted).  While a complaint need not contain detailed factual allegations, it must

set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a

complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks,

citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer

more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled

to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier,* 509 F.3d at

675; *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004);

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look

beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings

include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224

F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and

are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,

987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not

referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered

by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th

Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a

12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker

Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)  (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th

Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim

when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan

Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint

are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556

U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.

*R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not

evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has

pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B.      Rule 9(b) and the Private Securities Litigation Reform Act

Pursuant to Federal Rule of Civil procedure 9(b), "plaintiffs must state all allegations of fraud with particularity by identifying the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs.*, 112 F.3d 175, 179 (5th Cir. 1997)). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," but circumstances constituting fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). Dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated as a dismissal under Rule 12(b)(6) for failure to state a claim. *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996).

Federal securities claims based on allegations of fraud are also subject to the pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-21 (2007); *Owens*, 789 F.3d at 535; *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  The PSLRA incorporates Rule 9(b)'s requirements into the pleading standard for federal securities fraud claims.  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).  In addition to Rule 9(b)'s requirements, the PSLRA requires a plaintiff, who alleges in a private securities action that the defendant made misleading statements or omissions, to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u4(b)(1)(B).  For "each act or omission alleged" to be false or misleading, a plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  A plaintiff asserting a federal securities fraud claim must therefore "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*; *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) ("[A] plaintiff alleging a section 10(b)/Rule 10b-5 claim must now plead specific facts giving rise to a strong inference of scienter.") (citations omitted).  "[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey*, 540 F.3d at 339 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)).

Allegations of motive and opportunity may enhance the strength of the inference of scienter. *Flaherty*, 565 F.3d at 208.  Without more, however, motive and opportunity allegations are insufficient to satisfy the scienter requirement. *Id.*  In addition, "[o]missions and ambiguities count against inferring scienter, for plaintiffs must state with particularity facts giving rise to a strong

**Memorandum Opinion and Order – Page 15**

inference that the defendant acted with the required state of mind." *Tellabs, Inc.*, 551 U.S. at 326 (citation and internal quotation marks omitted).  An allegation regarding a statement or omission may be made on information and belief, but "the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u4(b)(1)(B). While every single fact upon which a plaintiff's beliefs concerning false or misleading statements are based need not be pleaded with particularity, the plaintiff must nevertheless "plead with particularity *sufficient* facts" to support its beliefs.  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 352 (5th Cir. 2002) (emphasis in original and citation omitted).

For purposes of a securities fraud claim, scienter means to "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)).  "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *R2 Invs. LDC*, 401 F.3d at 643 (internal quotations marks and citations omitted).  Pursuant to the PSLRA, the court considers "plausible inferences opposing as well as supporting a strong inference of scienter." *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008).  The inference of scienter, however, must ultimately be "'cogent and compelling,' not merely 'reasonable' or 'permissible.'" *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 324).  "A complaint will only survive if the inference of scienter is 'at least as compelling as any opposing inference one could draw from the

facts alleged.'" *Owens*, 789 F.3d at 536 (quoting *Tellabs*, 551 U.S. at 324).   "[A] tie favors the plaintiff." *Id.* (citation omitted).

III.   **Analysis**

A.   **Plaintiff's Federal Claims (Claims 1 through 4)**

1.   *Claim 1: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 (against all Defendants except McGlamery)*

In Claim 1, Plaintiff alleges that Defendants (other than McGlamery), acting singly or in concert, violated Section 10(b) of the Exchange Act and Rule 10b-5 in connection with the alleged scheme to defraud her of $540,000.

Section 10(b) of the Exchange Act prohibits "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).   Rule 10b-5, which implements section 10(b), makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege:[3]

"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon

the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv.*

*Partners, LLC v. Scientific–Atlanta, Inc*., 552 U.S. 148, 157 (2008) (citing *Dura Pharms., Inc. v.*

*Broudo*, 544 U.S. 336, 341-42 (2005)).

Defendants Gilman, OMG, Wavetech, and the Mintons move to dismiss Claim 1, arguing that

Plaintiff has failed to plead fraud with the requisite particularity, failed to adequately plead scienter

under Rule 9(b) and the PSLRA, and has failed to state a viable claim under Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder.  In response, Plaintiff contends that she has

provided enough particularity in specific detail to satisfy the pleading requirements of Rule 9(b) and

the PSLRA and to state a claim for violations of Section 10(b) of the Exchange Act and Rule 10b-5.

First, the court notes that Plaintiff's Complaint does not involve the typical set of facts where

a publicly-traded company publishes disclosures that include false representations of material fact

to induce investors into investing, or where the company omits material information that it is

required to disclose.  As such, many of the cases upon which Defendants rely are not on point.  In

this case, the Complaint alleges Gilman falsely promoted OMG and Wavetech to Plaintiff as owning,

or owning a license to, "OMG Technology" and "Water Separation Technology."  Plaintiff alleges

that she was induced by Gilman's myriad fraudulent statements about the technology, and by the

Mintons' false statements regarding the lucrative nature of her investments, their appeals to the

---

[3] Although the Court used the word "prove" in stating the elements of a claim, *Stoneridge* was a Rule 12(b)(6) case.  Accordingly, allegations must be sufficient for the court to reasonably infer that a violation has occurred that encompasses all of these elements.

**Memorandum Opinion and Order – Page 18**

"Christian God," and their statements endorsing Gilman's trustworthiness and abilities to produce such technology, in deciding to invest in OMG and Wavetech.  Plaintiff alleges facts that Gilman and the Mintons made these misrepresentations knowingly and willfully, or in reckless disregard of their falsity, and that she relied on the statements to her detriment in the amount of $540,000.

In the Complaint, Plaintiff sets out in detail the false statements of material fact allegedly made by Gilman (Compl. ¶¶ 18-29, 37, and 43-47), as well as allegations of how and when the representations were made.  Plaintiff sets forth similarly detailed allegations regarding the Mintons and their alleged role in the scheme to defraud her. *Id.* ¶¶ 14-16, 51-53, and 56.  Plaintiff also alleges how she relied on the alleged representations and alleges what Defendants received, to the extent of her knowledge, as a result of her reliance on the misrepresentations.  With respect to scienter, the court determines that the Complaint alleges enough specific facts to support a strong enough inference of scienter under *Tellabs, Inc.*, 551 U.S. at 326, the PSLRA, and Rule 9(b).  As one example, Plaintiff alleges that Gilman induced her into investing in OMG when, at the time, OMG had not even been formed.  She alleges that OMG was formed two weeks after her investment, when McGlamery filed a Certificate of Formation with the Texas Secretary of State.  As stated by the Fifth Circuit, "[I]f any single allegation, standing alone, created a strong inference of scienter, the court would not need to consider additional allegations of scienter." *Owens*, 789 F.3d at 537.  The court agrees with Plaintiff that offering to sell her securities in an unregistered Texas limited liability company that does not even exist, and then forming the company two weeks after her initial investment of $40,000, creates a strong inference of the requisite scienter under the PSLRA.

Further, as the Fifth Circuit has noted, "the plaintiff[] need not allege all facts that may be related to [her] claims, since such a requirement is impossible at the pleading stage because, in nearly

every securities fraud case, only defendants know all the facts related to the alleged fraud." *Tchuruk*, 291 F.3d at 354 (internal quotations omitted). Thus, for example, with regard to OMG Technology and Water Separation Technology, which Plaintiff alleges were bogus, whether the technology actually exists and whether independent laboratories have, in fact, confirmed its alleged functionality as represented to her by Gilman, are facts peculiarly within the knowledge of Defendants. *See generally Tuchman*, 14 F.3d at 1068 ("If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief."). Here, the court concludes that Plaintiff has adequately pleaded with particularity the facts now known to her with regard to Defendants' fraudulent representations and actions, and these allegations satisfy both Rule 9(b) and the PSLRA, and are sufficient to state claim for violations of Section 10(b) of the Exchange Act and Rule 10b-5.

Accordingly, the court **denies** Defendants Fred and Marlane Minton's Motion to Dismiss Claim 1, and **denies** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claim 1.

> 2. *Claim 2: Violation of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77(e)(c)] (against Gilman, OMG, and Wavetech only)*

Plaintiff asserts a claim for violations of Sections 5(a) and 5(c) of the Securities Act against Gilman, OMG, and Wavetech. Section 5(a) of the Securities Act makes it a violation of federal law to "make use of any means or instruments of transportation or communication in interstate commerce or the mails to sell [an unregistered] security," or "to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a). Section 5(c), similarly, prohibits unregistered offers to sell and buy unregistered securities. 15 U.S.C. § 77e(c).

**Memorandum Opinion and Order – Page 20**

In support of dismissal, Gilman, OMG, and Wavetech contend that no private cause of action is recognized under Section 5 of the Securities Act.  In her response brief, Plaintiff fails to even address this argument.  In their reply brief, Gilman, OMG, and Wavetech argue that Plaintiff's failure to even address this argument is a concession that she lacks a private right of action, and Claim 2 should be dismissed.

Having considered the pleadings, Defendants' arguments in support of dismissal of Claim 2, and in light of Plaintiff's failure to respond to the argument that Claim 2 should be dismissed under applicable law, the court **grants** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claim 2.

     *3.*     *Claim 3: Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] (against Gilman, OMG, and Wavetech only)*

In Claim 3, Plaintiff alleges that Gilman, OMG, and Wavetech violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).  Section 15(a) of the Exchange Act, 15 U.S.C. § 78o, makes it unlawful for any "broker or dealer" to "make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance" with the section. 15 U.S.C. § 78o(a)(1).

In support of dismissal, Gilman, OMG, and Wavetech argue that no private right of action is recognized under Section 15(a) of the Exchange Act.  In response, Plaintiff argues that the "Fifth Circuit has recognized that a private right of action exists under section 29(b) [of the Exchange Act]."  Pl.'s Resp. 9 (Doc. 26).  As Gilman, OMG, and Wavetech correctly note in their reply brief, Plaintiff has not alleged a violation of Section 29(b) in her Complaint.  A plaintiff may not amend her complaint in her response to a motion to dismiss.  "Review of a Rule 12(b)(6) dismissal is, by

its very nature, limited to the allegations and theories set forth in the complaint that the district court

has before it when granting the motion to dismiss." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F.

App'x 790, 793 (5th Cir. 2014) (unpublished); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d

569, 577 (N.D. Tex. 2009) (holding that a court may not consider statements or allegations in a

response filed by the plaintiffs). This means that a court is limited to consideration of the pleadings,

and matters or theories raised in a response are not part of the pleadings.

Having considered the pleadings, Defendants' arguments, and Plaintiff's failure to provide

the court with any authority for her claim under Section 15(a), the court **grants** Defendants Paul

Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claim 3.[4]

    4.    *Claim 4: RICO Violations (against all Defendants except McGlamery)*

In Claim 4, Plaintiff alleges that the Mintons, Gilman, OMG, and Wavetech engaged in a

pattern of racketeering activity in furtherance of an enterprise engaged in the fraudulent sale of

unregistered securities in violation of 18 U.S.C. §§ 1961 and 1962. Defendants move to dismiss

Claim 4, arguing in their respective motions to dismiss that the RICO statute prohibits the use of

securities fraud as a predicate act. The court agrees.

RICO provides a private right of action for persons harmed by a pattern of racketeering

activity. 18 U.S.C. §§ 1962, 1964(c). Congress, however, limited this right by amending RICO in

1995, as part of the PSLRA, "to bar civil RICO claims based on 'any conduct that would have been

actionable as fraud in the purchase or sale of securities.'" *Affco Invs. v. Proskauer Rose, LLP*, 625

F.3d 185, 189 (5th Cir. 2010) (quoting 18 U.S.C. § 1964(c)). Thus, if the racketeering activity

---

[4] Even were the court to consider Claim 3 as presented, the court determines that Lohr's claim would be dismissed under Rule 12(b)(6), as she has failed to adequately allege that Gilman qualifies as a person engaged in the business of effecting transaction in securities for the account of others, and, therefore, fails to state a claim that Gilman operated as an unregistered broker-dealer. *See* 15 U.S.C. § 78c(a)(4).

alleged to support a RICO claim is characterized by Plaintiff as wire, mail, or bank fraud, but it also amounts to securities fraud, the RICO claim must be dismissed.  *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 619 (S.D. Tex. 2003).  "[T]he court should not permit a surgical presentation of the cause of action to undermine the congressional intent behind the RICO Amendment [effected by the PSLRA]."  *Id.* (internal punctuation and citation omitted).

In this case, Plaintiff alleges she was deceived into purchasing an interest in OMG and Wavetech, that purportedly owned, or owned a licensed to, OMG Technology and Water Separation Technology, respectively.  As Defendants correctly note, "[t]he basis for Plaintiff's entire case, including her RICO claim, is that Defendants fraudulently sold her worthless securities."  Doc. 21 at 10.  Allowing Plaintiff to characterize or label the predicate acts of her securities fraud claim as mail and wire fraud would undermine congressional intent behind the RICO amendments.  *See* 18 U.S.C. § 1964(c), *supra*.  Thus, on the face of the pleadings, the court determines that Plaintiff's RICO claim is barred by the PSLRA.

Accordingly, the court **grants** Defendants Fred and Marlane Minton's Motion to Dismiss Claim 4 and **grants** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claim 4.

### B.    Plaintiff's State Law Claims (Claims 5 through 12)

The court has determined that Plaintiff has adequately alleged a federal securities fraud claim against Defendants Gilman, OMG, Wavetech, and the Mintons in Claim 1.  Thus, the court may exercise its supplemental jurisdiction over state law claims that it finds are "so related to claims in the action . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).

Accordingly, the court now considers Defendants' various motions for the dismissal of Plaintiff's state law claims.

> *1.    Claim 5 (against all Defendants except McGlamery), Claim 6 (against all Defendants), and Claim 7 (against all Defendants except McGlamery)*

Claim 5 alleges violations of Texas's Blue Sky Laws, Tex. Rev. Civ. Stat. Ann. arts. 581-33.[5] Claim 6 alleges statutory fraud,[6] and Claim 7 alleges common law fraud.[7] With respect to all Defendants other than McGlamery, these claims are premised on the same allegations of false and misleading statements referenced to support Plaintiff's federal securities fraud claim, which she alleges were known to be false when made, and which were made with the intent to induce her to rely on them, which she alleges she did to her detriment when she invested $540,000 in OMG and Wavetech. Claims 5, 6, and 7 are alleged to have arisen out of the same set of operative facts as the federal securities fraud claims, *supra*, which the court already found sufficient to satisfy the requisite pleading standards under Rules 12(b)(6) and 9(b). Hence, these state law claims are equally

---

[5] The Texas Securities Act ("TSA") imposes liability on those who sell securities:

> "by means of an untrue statement of a material fact or an omission to state a material fact," and imposes liability on a person who "materially aids a seller, buyer, or issuer of a security" if the person acts "with intent to deceive or defraud or with reckless disregard for the truth or the law."

*Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 837 (Tex. 2005) (quoting Tex. Rev. Civ. Stat. Ann. art. 581-33F(2)).

[6] The elements of statutory fraud are: (1) a transaction involving real estate or stock; (2) the defendant made a false representation of fact, a false promise, or benefited by not disclosing a third party's representation or promise was false; (3) the false representation or promise was made for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract. Tex. Bus. & Com. Code Ann. § 27.01(a).

[7] The elements of common law fraud are:
(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.
*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

**Memorandum Opinion and Order – Page 24**

sufficient as the federal securities fraud claims to withstand the arguments raised in the pending motions to dismiss under Rule 12(b)(6) and Rule 9(b).  Accordingly, the court **denies** Defendants Fred and Marlane Minton's Motion to Dismiss Claims 5, 6, and 7, and **denies** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claims 5, 6, and 7.

With respect to Defendant McGlamery, against whom Plaintiff brings Claim 6 (statutory fraud), the court determines that Plaintiff has failed to satisfy Rule 9(b) and Rule 12(b)(6).  As McGlamery correctly notes in his Motion to Dismiss, "Plaintiff barely mentions [him] in the factual allegations" and the only definitive action Plaintiff alleges against him is that he "filed formation documents with the Texas Secretary of State that list him as a manager of Defendant [OMG]." McGlamery Mot. to Dismiss 1 (quoting Compl. ¶¶ 34-35) (Doc. 19).  Even viewing all well-pleaded allegations as true, and drawing all inferences in Plaintiff's favor, the court determines that Plaintiff fails to allege when, where, and how McGlamery defrauded her.  Plaintiff never specifies what representations McGlamery made, let alone when or how he made them or why they were false. Plaintiff's fraud allegations against McGlamery fall short of the particularity requirements of Rule 9(b) and will be dismissed for this reason.  *See Owens*, 789 F.3d at 535 (quoting *Tuchman*, 14 F.3d at 1068) (Under Rule 9(b), "plaintiffs must state all allegations of fraud with particularity by identifying the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'").

Claim 6 as against McGlamery also fails to state a claim under Rule 12(b)(6).  Plaintiff fails to allege facts showing McGlamery made any kind of representation to her at all, benefited from any representation, let alone made a false representation.  She also has not adequately alleged reliance.

*See* Tex. Bus. & Com. Code Ann. § 27.01(a) (setting forth elements of a cause of action for statutory fraud).

Accordingly, the court **grants** Defendant Raymond McGlamery's Motion to Dismiss Claim 6 for failure to satisfy Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> 2. *Claim 8: Money Had and Received (against Gilman, OMG, and Wavetech only); Claim 9: Declaratory Judgment (against Gilman, OMG, and Wavetech only); Claim 10: Piercing the Corporate Veil (against Gilman, OMG, Wavetech, and McGlamery); Claim 11: Aiding and Abetting (against the Mintons and McGlamery only); and Claim 12: Conspiracy (against all Defendants)*

With respect to Claims 8 through 12, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiff, *see Sonnier*, 509 F.3d at 675, the court determines that, with the exception of the claims against Defendant McGlamery, Plaintiff has adequately stated claims sufficient to withstand Defendants' respective motions to dismiss. *See* Compl. ¶¶ 105-128. Accordingly, the court **denies** Defendants Fred and Marlane Minton's Motion to Dismiss Claims 11 and 12, and **denies** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss Claim 8, 9, 10, and 12.

With respect to Claims 10, 11, and 12, as alleged against Defendant McGlamery, however, the court concludes that Plaintiff has failed to satisfy Rule 9(b)'s pleading requirements and failed to state a claim under Rule 12(b)(6). As already stated with respect to the court's dismissal of Claim 6 (statutory fraud) as alleged against McGlamery, Plaintiff's allegations against McGlamery are scant, and the only definitive action Plaintiff alleges against him is that he "filed formation documents with the Texas Secretary of State that list him as a manager of Defendant [OMG]." McGlamery Mot. to Dismiss 1 (quoting Compl. ¶¶ 34-35) (Doc. 19). Absent any underlying

actionable allegations, such as those she makes in detail against the other Defendants, *see supra*, Sec. I, the allegations are conclusory and fail under Rule 9(b) and Rule 12(b)(6).

Accordingly, the court **grants** Defendant Raymond McGlamery's Motion to Dismiss Claims 10, 11, and 12 for failure to satisfy Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   Conclusion

For the reasons herein stated, the court **grants** Defendant Raymond McGlamery's Motion to Dismiss First Amended Complaint (Doc. 19); **grants in part and denies in part** Defendants Fred and Marlane Minton's Motion to Dismiss First Amended Complaint (Doc. 20); and **grants in part and denies in part** Defendants Paul Gilman, Oil Migration Group, LLC, and Wavetech29, LLC's Motion to Dismiss First Amended Complaint (Doc. 21).

Claims 2, 3, and 4 are hereby **dismissed with prejudice** for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Claims 6, 10, 11, and 12, as alleged against Defendant McGlamery, are **dismissed without prejudice** for failure to satisfy the pleading requirements of Rule 9(b) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As to those claims dismissed without prejudice, the court must determine whether Plaintiff should be given leave to amend.  Defendant McGlamery opposes Plaintiff's request for leave to amend, arguing that she has already had an opportunity to amend after Defendants filed their first set of motions to dismiss, which the court denied as moot in light of her amended pleading.  While this is true, the court, nevertheless, concludes that Plaintiff should be given leave to amend once with the benefit of having the court's decision before her.

The deadline for Plaintiff to file an amended pleading to cure the pleading deficiencies with respect to Claims 6, 10, 11, and 12 against Defendant McGlamery is **April 20, 2017.**   Failure to amend by this time will result in Claims 6, 10, 11, and 12, as alleged against McGlamery, to be dismissed with prejudice for the reasons herein stated, or dismissed without prejudice for failure to comply with a court order pursuant to Federal Rule of Civil Procedure 41(b).

**It is so ordered** this 30th day of March, 2017.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 28**