IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDETTE LOHR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-1931-BN |
| | § | |
| PAUL GILMAN; FREDERICK D. | § | |
| MINTON, PhD; MARLANE | § | |
| MINTON; OIL MIGRATION GROUP, | § | |
| LLC; and WAVETECH29, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER ON DEFAULT JUDGMENT

Plaintiff Claudette Lohr has filed a motion for entry of default judgment against Defendants Frederick Minton and Marlane Minton (the "Mintons"). *See* Dkt. No. 87. For the reasons set forth below, the Court GRANTS Lohr's motion for entry of default judgment.

## Background

This case arises from an alleged fraudulent investment scheme in oil and gas and bio-fuel companies. *See* Dkt. No. 31 (Plaintiff's Second Amended Complaint); *Lohr v. Gilman*, 248 F. Supp. 3d 796, 799-804 (N.D. Tex. Mar. 30, 2017) (summarizing Lohr's allegations).

Lohr's allegations concerning the Mintons are as follows:

Lohr, a widow living in Dallas, Texas, brings this private securities fraud action against the Mintons and alleges that, acting in concert with Defendant Paul Gilman

("Gilman"), they fraudulently induced her into making a total investment of $540,000 in two companies – Oil Migration Group, Inc. ("OMG") and Wavetech29, LLC ("Wavetech") – both of which she contends are sham enterprises. According to Lohr, the Mintons and Gilman falsely promoted these enterprises to her as owning, or owning a license to, cutting edge audio technology that affects oil viscosity and oil recovery procedures (hereinafter, the "OMG Technology" and the "Water Separation Technology"). Lohr alleges that she was induced by the Mintons' and Gilman's myriad fraudulent statements about the technology to invest in OMG and Wavetech, and she charges that the Mintons and Gilman made these misrepresentations knowingly and willfully, or in reckless disregard of their falsity, and that she relied on the statements to her detriment.

In or about late 2013, Lohr met Defendant Marlane Minton ("Mrs. Minton") at a Bible study at a church they both attended. Mrs. Minton often discussed oil and gas businesses and bio-fuel businesses in which she and her husband, Defendant Frederick Minton ("Mr. Minton"), allegedly invested. Mrs. Minton seemed especially interested in discussing the Mintons' alleged investments with widows who attended the Bible study. In or about 2014, Lohr learned that Mrs. Minton had dental surgery and prepared a meal, which she took to the Minton home, at which time Mr. Minton discussed investing in OMG. The Mintons told Lohr that they had met Gilman in connection with their investments in the movie industry, and that Gilman was seeking investments in OMG and Wavetech to obtain funding for additional testing and to pursue patents for the OMG Technology. The Mintons told Lohr that Gilman was

about to meet with investors in New York to raise money to file for patents and for further testing of the OMG Technology. The Mintons also told Lohr that time was of the essence to invest in OMG and Wavetech, as the value of the two entities was certain to increase as Gilman continued to prove the application of the OMG Technology in various areas of the oil and gas industry. The Mintons assured Lohr that Gilman would sell his concept through OMG and Wavetech, and that she would receive a return on her investment prior to the end of 2014. The Mintons made these false representations with the intent that Lohr would rely upon them and invest in OMG and Wavetech.

Mr. Minton, who holds a Ph.D. in Psychology, and Mrs. Minton actively participated and assisted Gilman in inducing Lohr to invest in Gilman's sham companies (OMG and Wavetech) and contrived OMG Technology and Water Separation Technology. The Mintons knew that Gilman's representations, made in his capacity as owner or representative of OMG and Wavetech, were false. The Mintons personally benefitted from assisting Gilman in inducing Lohr into investing in the sham companies and contrived technologies.

Mr. Minton, whom Lohr met at the church she attends, used his training in psychology to cultivate a relationship of trust with Lohr, even going so far as counseling her free of charge, notwithstanding that his professional counseling license had expired. During all relevant times, the Mintons reassured Lohr of Gilman's ability to create the technology and vouched for his credibility and trustworthiness so as to convince Lohr of the legitimacy of the OMG Technology and the Water Separation

Technology, as well as the legitimacy of the companies Gilman created and in which he was actively seeking investors, all despite the Mintons' knowledge that Gilman's representations were false. The Mintons' assurances often involved referencing the "Christian God" to cause Lohr to trust the representations, as the Mintons and Lohr attended the same church. It was common that the Mintons would pray with Lohr, and the prayers often included a petition for Lohr to get accustomed to being someone wealthy, as well as a petition for blessings for Gilman. The Mintons' reassurances directly assisted, and aided and abetted, OMG, Wavetech, Raymond McGlamery, and Gilman "in pilfering" Lohr's money.

In furtherance of their scheme, Mr. Minton provided Lohr with counseling regarding how to "fit in" with the "rich folk" at the Bonaventure in preparation for her receipt of "millions" from her investment. Mr. Minton discussed how Lohr would set up foundations to handle the "millions" that he indicated she would be receiving from her investments. Mr. Minton made these reassuring comments despite knowing Gilman's representations regarding OMG Technology and Water Separation Technology were false.

On June 3, 2015, Lohr filed this lawsuit. *See* Dkt. No. 1. At the core of the lawsuit are Lohr's allegations that Gilman and the Mintons, motivated by personal profit, knowingly participated in setting up OMG and Wavetech, shell companies that purportedly owned an interest in contrived technology (OMG Technology and Water Separation Technology), for the sole purpose of fraudulently inducing Lohr to invest her money. In total, Lohr invested $540,000 in OMG and Wavetech.

Lohr filed her Complaint on June 3, 2015. *See* Dkt. No. 1.

Frederick Minton was served with summons and a copy of the complaint by personal service on June 8, 2015, *see* Dkt. No. 5, and Marlane Minton was served with15cv1931 summons and a copy of the complaint on June 15, 2018, *see* Dkt. No. 7.

The Mintons filed a motion to dismiss on August 10, 2015. *See* Dkt. No. 11. The Court denied the Mintons' original motion to dismiss as moot on October 5, 2015. *See* Dkt. No. 22.

Lohr filed and served her First Amended Complaint on the Minton Defendants on September 7, 2015. *See* Dkt. No. 7, 2015. The Mintons filed a motion to dismiss the amended complaint on September 28, 2015. *See* Dkt. No. 20. The Court granted in part and denied in part the Mintons' motion to dismiss the amended complaint on March 30, 2017. *See* Dkt. No. 30.

Lohr filed and served her Second Amended Complaint on the Mintons on April 20, 2017. *See* Dkt. No. 31.

United States District Judge Sam A. Lindsay was the presiding judge in this action until May 30, 2017, when it was reassigned to the undersigned United States magistrate judge, *see* Dkt. No. 38, after the Court received notice that all parties consent to trial before, and entry of final judgment by, the undersigned under 28 U.S.C. § 636(c), *see* Dkt. No. 36.

On June 1, 2017, the Court entered an order granting a motion to withdraw as counsel for the Mintons filed by Toby M. Galloway and the law firm of Kelly Hart &

Hallman LLP, and Philip H. Hilder and the law firm of Hilder & Associates, P.C., based on the Mintons' failure to pay counsel under a written agreement. *See* Dkt. No. 44.

On July 5, 2017, Lohr filed a motion to compel the Mintons to file answers to the Second Amended Complaint. *See* Dkt. No. 47. On July 27, 2017, the Court granted the motion and ordered the Mintons to file answers to Plaintiff's Second Amended Complaint by August 10, 2017. *See* Dkt. No. 52.

On August 8, 2017, the Mintons filed responses to interrogatories, requests for production, and requests for admissions. *See* Dkt. No. 56.

On August 28, 2017, Lohr filed a motion to strike the documents filed by the Mintons on August 8, 2017 as an "answer" to the Second Amended Complaint. *See* Dkt. No. 63.

On November 8, 2017, the Court granted in part and denied in part the motion to strike. The Court stated that

> [t]he discovery responses filed by Frederick D. Minton and Marlane Minton do not constitute an answer to Plaintiff's Second Amended Complaint as required by Federal Rule of Civil Procedure 8(b) ... and [t]he Court will not treat those discovery responses as the answer that the Court previously ordered the Mintons to file by August 10, 2017.

The Court further ordered the Mintons to file a formal answer by December 8, 2017 and stated that

> [i]f the Mintons do not – by December 8, 2017 – file an answer or otherwise respond to Plaintiff's Second Amended Complaint in compliance with the Federal Rules of Civil Procedure, they will be in default under Federal Rule of Civil Procedure 55. The Court one final time admonishes the Mintons that the failure to timely file answers to Plaintiff's Second Amended

Complaint may result in the allegations contained in Plaintiff's Second Amended Complaint being admitted and default judgment being rendered against them.

*See* Dkt. No. 66.

The Mintons did not file an answer or otherwise respond to Plaintiff's Second Amended Complaint by December 8, 2017.

On December 12, 2017, the Court entered an order directing the clerk of the court to enter default as to the Mintons because they "failed to plead or otherwise defend as required," and ordered Lohr to file a motion for default judgment by December 29, 2017. *See* Dkt. No. 75. The Clerk made an entry of default as to the Mintons on December 12, 2017. *See* Dkt. No. 77.

Also on December 12, 2017, the Mintons filed a motion to dismiss. *See* Dkt. No. 77. The Court considered the motion to dismiss as a motion to set aside default under Federal Rule of Civil Procedure 55(c). *See* Dkt. No. 78. The Court abated the December 29, 2017 deadline for Lohr to file a motion for default judgment. Instead, the Court ordered Lohr to respond to the motion to set aside default by January 2, 2018, and ordered the Mintons to file a reply by February 3, 2018. *See id.* Lohr timely filed a response. *See* Dkt. No. 83. The Mintons did not file a reply.

On February 23, 2018, the Mintons finally filed an untimely answer to Plaintiff's Second Amended Complaint. *See* Dkt. No. 85.

On March 19, 2018, the Court found that the Mintons failed to show good cause to set the default aside and denied the Mintons' motion to set aside default. Dkt. No. 86. The Court also ordered Lohr to file a motion for default judgment against the

Mintons by April 9, 2018. *See id.*

Lohr filed her motion for default judgment against the Mintons on April 9, 2018. *See* Dkt. No. 87. Lohr seeks entry of default judgment; liquidated damages in the amount of $540,000; unliquidated exemplary damages in the amount of an additional $540,000; and attorneys' fees and expenses in the amount of $62,854.35.

The Court held an evidentiary hearing on Plaintiff's Motion for Entry of Default Judgment Against Defendants Frederick Minton and Marlane Minton [Dkt. No. 87] on November 2, 2018. *See* Dkt. No. 94.

### Legal Standards

The Court may enter a default judgment when a defendant fails to answer or otherwise respond to a complaint within the time required by the Federal Rules and after the Clerk makes an entry of default. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "'A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations.'" *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

To obtain a default judgment, Plaintiff must make a *prima facie* showing of jurisdiction. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001).

There must also be a sufficient basis in the pleadings for the judgment requested. *See Wooten*, 788 F.3d at 498. Federal Rule of Civil Procedure 8(a)(2)

"requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* (internal quotation marks omitted). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks omitted). "[D]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted).

## Analysis

I. <u>Lohr is entitled to default judgment.</u>

    A. <u>Failure to answer or comply with court orders and entry of default</u>

The Mintons repeatedly failed to answer or otherwise respond to Lohr's Second Amended Complaint, despite being ordered to do so, and finally filed an untimely answer only after the Clerk of the Court had entered default against them. Thus, Lohr's request for a default judgment is contingent on whether she made a *prima facie* showing of jurisdiction and pleaded her claims against the Mintons in a manner that satisfies Rule 8.

    B. <u>Jurisdiction</u>

Lohr has sufficiently shown that the Court has jurisdiction over this matter. In her original complaint, Lohr asserted claims for violations of Sections 5(a), (c) and Section 17 of the Securities Act of 1933; violation of Sections 15(a) and 17, Rule 10(b)(5)

of the Securities Exchange Act of 1933; civil RICO claims under Title 18 of the United States Code; violation of Texas Blue Sky laws; statutory fraud; common law fraud; money had and received; declaratory judgment for a constructive trust; piercing the corporate veil; aiding and abetting – assisting or encouraging; and conspiracy. *See* Dkt. No. 1. Accordingly, this Court has jurisdiction under 28 U.S.C. §§§ 1331, 1337, and 1367; 15 U.S.C. §§ 78aa(a) and 77v(a); and 18 U.S.C. § 1964(c).

C. <u>Judgment on the pleadings</u>

Lohr has sufficiently pleaded her claims against the Mintons and is entitled to default judgment on those claims. In her Second Amended Complaint, which is the live pleading, Lohr asserted claims against the Mintons for fraud violations under Section 10(b) of the Securities Exchange Act, violation of Texas Blue Sky laws, statutory fraud, common law fraud, aiding and abetting – assisting or encouraging, and conspiracy. *See* Dkt. No. 31.

1. <u>Fraud violations of Section 10(b) of the Exchange Act</u>

Lohr alleges that the Mintons, acting singly or in concert with Gilman, violated Section 10(b) of the Exchange Act and Rule 10b-5 in connection with the alleged scheme to defraud her of $540,000. *See* Dkt. No. 31 at 16.

Section 10(b) of the Exchange Act prohibits "in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, which implements section 10(b), makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 157 (2008) (citing *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, (2005)).

Lohr alleges that the Mintons, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and use of the mails have: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as fraud and deceit upon purchasers, prospective purchases, and any other persons. Lohr also alleges that the Mintons made the misrepresentations and omissions knowingly or

with severe recklessness regarding the truth. *See* Dkt. No. 31. Lohr sets out detailed allegations regarding the Mintons and their alleged role in the scheme to defraud her. Lohr also alleges how she relied on the alleged representations and alleges what the Mintons received, to the extent of her knowledge, as a result of her reliance on the misrepresentations. Lohr has sufficiently pleaded her claim against the Mintons for violations of Section 10(b) of the Exchange Act.

     2.     <u>Texas Blue Sky Laws, statutory fraud and common law fraud</u>

Lohr asserts claims against the Mintons for violations of the Texas Blue Sky Laws. *See* Tex. Civ. Stat. Ann. art. 18.581-33 (Vernon 2001). Lohr alleges that the Mintons made misrepresentations of relevant facts and/or failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading during the sale and/or purported sale of securities to her. As a result of the misrepresentations of relevant facts and/or failure to disclose material facts, the Mintons are liable to Lohr pursuant to Tex. Civ. Stat. Ann. art. 19.581-33(A)(2). Lohr alleges that, to the extent that the Mintons are not the seller and/or issuer of the securities sold to Lohr, but rather directly or indirectly control the seller and/or issuer of the securities sold to Lohr, the Mintons are liable to Lohr pursuant to Tex. Civ. Stat. Ann. art. 19.581-33(F)(1). And Lohr alleges that, to the extent that the Mintons are neither the seller and/or issuer of the securities sold to Lohr nor a person who either directly or indirectly controls the seller and or issuer of the securities sold to Lohr but directly or indirectly with the intent to deceive or defraud or with reckless disregard for the truth or the law materially aided the seller

or issuer of a security to Lohr, the Mintons are liable to Lohr pursuant to Tex. Civ. Stat. Ann. art. 19.581-33(F)(3). *See* Dkt. No. 31 at 16-17.

The Texas Securities Act ("TSA") imposes liability on those who sell securities "by means of an untrue statement of a material fact or an omission to state a material fact" and imposes liability on a person who "materially aids a seller, buyer, or issuer of a security" if the person acts "with intent to deceive or defraud or with reckless disregard for the truth or the law." *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 837 (Tex. 2005) (quoting TEX. REV. CIV. STAT. ANN. art. 581-33F(2)).

The elements of statutory fraud are: (1) a transaction involving real estate or stock; (2) the defendant made a false representation of fact, a false promise, or benefitted by not disclosing a third party's representation or promise was false; (3) the false representation or promise was made for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract. *See* TEX. BUS. & COM. CODE § 27.01(a).

The elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51

S.W.3d 573, 577 (Tex. 2001)).

Lohr's claims against the Mintons for violations of Texas's Blue Sky Laws, statutory fraud, and common law fraud are premised on the same allegations of false and misleading statements referenced to support Lohr's federal securities fraud claim, which she alleges were known to be false when made, and which were made with the intent to induce her to rely on them, which she alleges she did to her detriment when she invested $540,000 in OMG and Wavetech. These claims are alleged to have arisen out of the same set of operative facts as the federal securities fraud claims, which the court already found sufficient to satisfy the requisite pleading standards for entry of default judgment.

### 3. Aiding and abetting - assisting or encouraging

Based on those same allegations, Lohr alleges that the Mintons aided, abetted, assisted, or encouraged Gilman individually and/or by and through OMG and Wavetech to commit a tort against her. *See* Dkt. No. 31 at 20-21.

As the Court explained in *Talon Transaction Technologies, Inc. v. StoneEagle Services, Inc.* and *Stoneeagle Services., Inc. v. Davis*:

> The Second Restatement of Torts sets forth the relevant law for a claim of assisting and participating: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

*Talon Transaction Tech., Inc. v. Stoneeagle Servs., Inc.*, No. 3:13-cv-902-P, 2013 WL

12172926, at *16 (Aug. 15, 2013) (quoting *Helena Chem. Co. v. Texell Fed. Credit Union*, No. W-05-CA-52, 2006 U.S. Dist. LEXIS 100615, at *16-17 (W.D. Tex. June 14, 2006) (quoting Restatement (Second) of Torts § 876 (1965))); *Stoneeagle Servs., Inc. v. Davis*, No. 3:13-cv-894-P, 2013 WL 12143946, at *9 (Aug. 14, 2013) (same). "Courts have interpreted section 876 as providing the basis for 'modern application of civil aiding and abetting' and to require two elements: '(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act.'" *Helena Chem. Co.*, 2006 U.S. Dist. LEXIS at *17 (quoting *Aetna Cas. & Sur. Co., v. Leahey Constr. Co.*, 219 F.3d 519, 532-33 (6th Cir. 2000)); see also *C.W. v. Zirus,* No. SA-10-CV-1044-XR, 2012 U.S. Dist. LEXIS 122560, at *24 (W.D. Tex. Aug. 29, 2012) (citations omitted) ("Despite refusing to recognize a claim based on a theory of concert of action, Texas courts have nevertheless analyzed the concert of action question by relying on the Restatement (Second) § 876 for a formulation of the elements that make up a concert of action claim.").

Lohr alleges that the Mintons had knowledge that Gilman's conduct individually and/or by and through OMG and Wavetech constituted a tort, that they intended to assist Gilman in committing the tort, that they gave Gilman assistance or encouragement in the commission of the tort, and that their assistance and/or encouragement was a substantial factor in enabling Gilman to commit the tort against Lohr. Consequently, Lohr alleges that the Mintons are jointly and severally liable for

the damages caused to her by Gilman individually and/or acting by and through OMG and Wavetech . Lohr has sufficiently pleaded her claim against the Mintons for aiding and abetting – assisting or encouraging.

4.    Conspiracy

Lohr finally asserts a conspiracy claim against the Mintons. "The essential elements of a civil conspiracy claim are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result ." *Homoki v. Conversion Servs., Inc.,* 717 F.3d 388, 404-05 (5th Cir. 2013).

Lohr sufficiently alleges that the Mintons conspired with Gilman to defraud Lohr and that they agreed to convince Lohr to invest in the scam companies OMG and Wavetech, which she did, and that Lohr was damaged as a result of the fraudulent investment scheme.

II.    Lohr is entitled to actual damages, attorney's fees, and expenses but not exemplary damages.

A.    Actual damages

Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). But, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial to the court, a hearing is unnecessary. *See Leedo Cabinetry,* 157 F.3d at 414; *see also James v. Frame*, 6 F.3d

307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James*, 6 F.3d at 311 (internal citations omitted).

Here, Lohr submitted a declaration setting forth her damages. *See* Dkt. No. 87-1. The damages set forth in Plaintiff's declaration are capable of mathematical calculation. Therefore, the Court need not conduct a hearing to enter a default judgment and determine the amount of damages under Federal Rule of Civil Procedure 55(b)(2).

In her declaration, Lohr states that she made six transfers of money, in the total amount of $540,000, to Gilman for the benefit of all Defendants, including the Mintons. Specifically, she transferred $40,000 on February 10, 2014; $150,000 on May 5, 2015; $100,000 on July 24, 2014; $100,000 on October 10, 2014; $100,000 on February 9, 2015; and $50,000 on March 11, 2015. *See* Dkt. No. 87-1 at 4. Lohr also provided copies of bank and financial records evidencing the transfers of funds. *See id.* at 6-58 (Exhibit A, specifically at App. 11, 18, 29, 37, 47, 54).

Accordingly, Lohr is entitled to $540,000 in actual damages from the Mintons.

B.    Exemplary damages

Lohr also seeks $540,000 in exemplary damages based on her fraud claims.

"'Texas courts have permitted entry of default judgment on claims for exemplary damages where the plaintiff has pleaded and presented evidence of the basis for such relief.'" *Geiken v. Worku*, No. 3:15-cv-2442-B, 2017 WL 1709692, at *9 (N.D. Tex. May

5, 2017) (quoting *Kennolyn Camp v. Wilson*, No. 4:16-cv-163-ALM-CAN, 2017 WL 933129, at *3 (E.D. Tex. Feb. 17, 2017)); *see also Rowe v. Reeves*, No. 3:04-cv-1875-G, 2005 WL 1150192, at *1-*2 (N.D. Tex. May 13, 2005) (holding plaintiff was entitled to recover exemplary damages, or two times the amount of economic damages, for default judgment involving fraud after evidentiary hearing on damages); TEX. CIV. PRAC. & REM. CODE §§ 41.003(a) (exemplary damages allowable when harm results from fraud, malice, or gross negligence), 41.008(b)(1)(A) (exemplary damages may not exceed an amount equal to "two times the amount of economic damages").

Factors supporting the reasonableness of exemplary damages include "(1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant." TEX. CIV. PRAC. & REM. CODE § 41.011(a)(1)-(6).

Lohr submitted a Declaration in support of her motion for default judgment against the Mintons and testified at the evidentiary hearing. She contends that the Mintons took advantage of their relationship as members of the same church and of her lack of investor experience to influence her to invest in scam companies.

Lohr testified that she inherited a farm and mineral interests from her parents. Although she is a nurse, she has managed the farm since she inherited it. The Mintons were aware that she had received money from drilling on the mineral interests and they encouraged her to invest it in Gilman's companies. They would often approach her at church about investing with Gilman. Mr. Minton told her that he didn't know how

much money she would get, but that "it'll be good."

Lohr had no experience with oil and gas or sound technology, and the Mintons were aware of her lack of experience. But what the Mintons explained to Lohr about Gilman's technology made sense to her. And Lohr also talked with a pumper on the farm drill site about the oil and gas technology before she invested in Gilman's companies. She did not talk to anyone else before she made the investment, but she talked to her CPA about it after Gilman could not provide the tax forms she needed to file her tax returns.

The nature of the wrong, the character of the conduct, and the degree of culpability of the wrongdoer all weigh against the Mintons. They took advantage of Lohr, a widow, through their shared church association and Mr. Minton's psychological training.

But the situation and sensibilities of the parties does not weigh in favor of an award of exemplary damages. Although she may not have been a sophisticated investor, Lohr worked as a nurse and maintained the farm she inherited. She also talked to a pumper before making the Gilman investments and admitted that she could have consulted others, like her accountant. The Mintons' actions may have been distasteful, but they do not rise to the level of offending a public sense of justice and propriety. Although no evidence concerning the Mintons' net worth has been submitted, the Mintons' attorney was allowed to withdraw from representing the Mintons because they had not paid him and the Mintons stated on the record during a hearing on that matter that they could not afford to pay their attorney and they have

represented themselves *pro se* since the attorney was allowed to withdraw. *See* Dkt. Nos. 33, 43, 44.

In this case, the Court finds that the evidence does not support an award of exemplary damages.

C.     Attorneys' fees and expenses

Lohr seeks attorneys' fees and expenses based on her claims for violations of the Texas Blue Sky Laws.

Under the Texas Securities Act, a party entitled to damages may be entitled to recover reasonable attorneys' fees if the court finds that such recovery would be equitable. TEX. CIV. STAT. ANN. art. 581-33(D)(7); *Covenant Capital Partners v. Soil Savers, Inc.*, No. 3:06-cv-399-O, 2008 WL 2941125, at *10 (N.D. Tex. July 30, 2008). To determine whether an award of attorneys' fees is equitable under the circumstances, the court considers a number of factors, including: the conduct of the parties in making the transaction, the conduct of both parties in the lawsuit, whether the defendant benefitted from the violation, and the fiduciary relationships. *See Reynolds v. M. Rimson & Co.*, Civ. A. No. H-94-2894, 1996 WL 617258, at * (S.D. Tex. Feb. 13 1996) (quoting commentary to article 581.33(D)(7)); *Citizens Ins. Co. of Am. v. Hakim Daccach*, 105 S.W.3d 712, 725 (Tex. App. – Austin 2003), *aff'd*, 217 S.W.3d 430, 459-60 (Tex. 2004). Given Lohr's allegations that the Mintons violated the Texas Securities Act by making untrue statements or omissions of material fact, conspired with Gilman to defraud Lohr, and took advantage of Lohr, including through Mr.

Minton's profession as a psychologist, the Court finds it equitable under the circumstances to award Lohr her reasonable attorneys' fees.

Under Texas law, a claimant must segregate recoverable from unrecoverable attorney's fees if any fees relate solely to a claim for which attorney's fees are unrecoverable. *See Tony Gullo Motors v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, "when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined," the fees need not be segregated. *Id.; see also Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 297-99 (5th Cir. 2007).

Here, Lohr need not segregate her attorney's fees because her claims against the Mintons are inextricably intertwined and the same discrete legal services advance the claim for which attorney's fees are recoverable (violation of the Texas Blue Sky laws) and those for which they are not.

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999); *see Monarch Inv., LLC v. Aurrecoechea*, Cause No.: A-14-CA-1019-SS, 2017 WL 1034647, at *3-*5 (W.D. Tex. Mar. 16, 2017) (applying the lodestar method to determine reasonable attorney's fees for violations of Texas Security Act). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours

expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended. There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11)the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800.

Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

Lohr designated her attorney, Mark Castillo, as an attorney's fees expert. *See* Dkt. No. 93, Ex. 25. Lohr's claim for attorney's fees is supported by Mr. Castillo's Declaration, Expert Fee Report, Curriculum Vitae, hearing testimony, and Curtis Castillo, P.C. ("CCPC") invoices. *See* Dkt. No. 93, Ex. 26 (Declaration); Dkt. No. 87-1 at 74-133 (Fee Report with supporting CCPC invoices); Dkt. No. 93, Ex. 27 (Fee Report); Dkt. 93, Ex. 28 (Curriculum Vitae); Dkt. No. 93, Ex. 29 (CCPC invoices); Dkt. No. 94 (hearing testimony). The amount of attorney's fees sought in these documents differs. In her motion for default judgment, Lohr seeks $55,873.84 in attorney's fees and expenses, and Mr. Castillo clarified at the evidentiary hearing that that is the amount of attorney's fees and expenses his client is seeking. *See* Dkt. No. 87 at 7; Dkt. No. 94.

Mr. Castillo declares that he is "a founding shareholder in the law firm of Curtis Castillo PC," is "licensed to practice law in Texas by the Supreme Court of Texas, in all federal and bankruptcy courts within the Northern, Southern, Eastern, and Western Districts of Texas, and in the Fifth Circuit Court of Appeals," "received his license to practice law in September 2000," and is the "lead attorney of record for Plaintiff" in this case. Mr. Castillo further declares that he personally performed or reviewed the services described in the Declaration and that he has personal knowledge of the legal services performed in this case.

Mr. Castillo further declared that the standard rates charged by CCPC are $425-

$500 per hour for shareholders; $275-$350 per hour for associate attorneys; $175 per hour for junior associates; and $115-$150 per hour for legal clerks. Mr. Castillo's fee was discounted nearly thirty percent, from $425 to $300 per hour, in this case. Mr. Castillo opines that the actual hourly rates, the range of billed rates, and the average hourly billed rates for the CCPC attorneys and legal assistants who have provided services on this engagement are reasonable for their level of skill and the nature of this matter.

Mr. Castillo declares that $62,854.35 is a reasonable and necessary amount of attorneys' fees and expenses in this case. He also declares that the total fees charged for actual legal services, excluding expenses, as of August 16, 2017 is $56,743.85. He further states that this represents 221.3 hours at a blended rate of $256.30 per hour. Mr. Castillo believes the blended rate is within the acceptable range for a reasonable blended rate for fraud litigation in federal court and commensurate with the rates charged in the Northern District of Texas and Texas legal market for services like those rendered by CCPC in this case.

The fees sought are for 221.3 hours of work performed by Mr. Castillo, associates Michael Myers and Chris Harbin, and law clerks from the law firm of Curtis Castillo PC ("CCPC"). The billing records Mr. Castillo submitted reflect the work that attorneys and law clerks from CCPC performed. The records include a narrative description of the work done and the number of hours that it took to complete the work.

The Court has carefully reviewed these records and finds that the 221.3 total hours that Lohr attributes to prosecuting this case are reasonable and necessary and

not excessive, duplicative, or inadequately documented and therefore were reasonably expended for the tasks for which the Court has determined that Lohr should be awarded her attorneys' fees.

The Court finds that blended rate of $256.30 per hour is reasonable and within the market rate for attorneys and law clerks handling this type of litigation in the Dallas area.

The Court therefore finds the appropriate lodestar here to be calculated as 221.3 hours at $256.30 an hour for a total of $56,719.19. The Court notes that additional attorneys' fees have been incurred by Lohr after August 16, 2017, but Lohr has not submitted evidence to support those fees.

The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Based on Mr. Castillo's representation during the hearing, the Court will reduce that amount of attorney's fees and expenses awarded to $55,873.84, the amount sought by Lohr in her motion for default judgment. The court finds no exceptional circumstances to further modify the lodestar amount.

D.    Postjudgment interest

Lohr is entitled to post-judgment interest. The issue of post-judgment interest on a judgment entered in federal court is governed by federal law. *See Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594-95 (5th Cir. 2006). 28 U.S.C. § 1961 provides, in pertinent part, that "interest shall be allowed on any money judgment in a civil case recovered in a district court" and that such "interest shall be calculated

from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Lohr is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid. *See* 28 U.S.C. § 1961(b).

## Conclusion

Plaintiff's Motion for Entry of Default Judgment Against Defendants Frederick Minton and Marlane Minton [Dkt. No. 87] is GRANTED. Accordingly, Plaintiff Claudette Lohr is entitled to Judgment against Frederick Minton and Marlane Minton, jointly and severally, in the amount of $540,000.00 in actual damages and $55,873.84 in attorneys' fees and expenses, for a total judgment of $595, 873.84, plus postjudgment interest.

SO ORDERED.

November 28, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE